ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL[1]**

| | | |
|---|---|---|
| **REDMANE TECHNOLOGY, LLC**<br>RECURRENTE(S)<br><br>V.<br><br>**DEPARTAMENTO DE SALUD Y D2SOL, INC. Y OTROS**<br>RECURRIDA(S) | **KLRA202500195** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA*<br>procedente del<br>**DEPARTAMENTO DE SALUD**<br><br>Propuesta Núm.:<br>**2024-PMP-MES-EE-004**<br><br>Sobre:<br>Adjudicación de Propuesta |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón; la Jueza Rivera Marchand y la Juez Barresi Ramos.

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 8 de agosto de 2025.

Comparece ante este Tribunal de Apelaciones, **REDMANE TECHNOLOGY, LLC (REDMANE)** mediante una *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato* incoada el 31 de marzo de 2025. En su escrito, nos solicita que revisemos la *Award Notification Eligibility and Enrollment System Takeover 2024-PRMP-MES-EE-004* decretada el 11 de febrero de 2025 por el PROGRAMA DE MEDICAID DEL **DEPARTAMENTO DE SALUD (DS)**.[2] Mediante esta decisión administrativa, se adjudicó la *buena pro* de la Propuesta Núm. 2024-PRMP-MES-EE-004 a favor de **D2SOL, INC. (D2SOL)**.

Exponemos el trasfondo fáctico y procesal que acompaña la presente controversia.

**- I -**

El día 22 de julio de 2024, el **DS** publicó un anuncio de propuesta para el *Puerto Rico Medicaid Program Eligibility and Enrollment System Takeover*

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025 sobre *Designación de Paneles en el Tribunal de Apelaciones*.
[2] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato,* págs. 768- 781.

*Request for Proposal*.[3] Lo anterior, para la prestación de servicios profesionales de un proveedor cualificado en sistemas de inscripción y elegibilidad del sistema *Cúram E&E* del Programa Medicaid en Puerto Rico. El aviso requería presentar una propuesta con los requisitos mínimos, mandatorios y necesarios, con una descripción general del proceso de evaluación, para seleccionar al proponente mejor cualificado en o antes del 12 de septiembre de 2024.[4] Los proponentes participantes lo fueron **REDMANE**, **D2SOL** y **TRILLIAN TECHNOLOGIES, INC. (TRILLIAN)**. **REDMANE** presentó su propuesta el 5 de septiembre de 2024.[5]

Luego de evaluadas las ofertas, el 14 de noviembre de 2024, el **DS** difundió una *Award Notification Eligibility and Enrollment System Takeover 2024-PRMP-MES-EE-004* en la cual se le adjudicó la *buena pro* a **D2SOL**.

Ante la inacción del **DS**, con relación a varias solicitaciones de acceso al expediente administrativo y reconsideración, el 26 de diciembre de 2024, **REDMANE** acudió ante este foro revisor mediante *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato* para impugnar la notificación por ser inoficiosa, ello en el caso: **KLRA202400705**.[6] En esa ocasión, se declaró ha lugar la petición de desestimación presentada por el

---

[3] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 14- 198. El *RFP* tuvo algunas modificaciones y correcciones que fueron notificadas mediante documentos intitulados: "*First Important Update*"; "*Second Important Update*"; "*Third Important Update*"; "*Fourth Important Update*"; "*Fifth Important Update*"; "*Sixth Important Update*". Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 209- 216.

[4] *Íd*., pág. 199- 208.

[5] *Íd*., pág. 217- 239.

[6] El 15 de noviembre de 2024, **REDMANE** presentó una comunicación escrita dirigida al Secretario del Departamento de Salud y a la Directora Ejecutiva del Programa de Medicaid de Puerto Rico con el propósito de informar su posición en relación a la notificación y solicitar la revisión del expediente y la adjudicación del *RFP*. Al no recibir respuesta alguna, el 16 de noviembre de 2024, tramitó una segunda misiva. De igual manera, **TRILLIAN** presentó su *Moción de Reconsideración* ante el **DS** por la falta de acceso al expediente. Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 384- 386; 398- 406; 724- 731; 859- 938. El 17 de enero de 2025, en el caso **CC-2025-0014**, el Tribunal Supremo de Puerto Rico declaró no ha lugar a la petición de *Certiorari* así como la solicitud de paralización en auxilio de jurisdicción. Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 939- 986. El 27 de junio de 2025, en el caso **AC-2025-0025**, nuestro Máximo Foro le concedió a la parte recurrida un plazo de veinte (20) días para mostrar causa por la cual no se deba expedir el recurso y ordenarle notificar la adjudicación de la subasta conforme a la Sección 3.19 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU). Anejo a la *Moción en Cumplimiento con Orden y Oposición a Cuarta Moción en Auxilio de Jurisdicción* presentada el pasado 15 de julio, por **D2SOL**.

**DS**, y en su consecuencia, se desestimó el recurso por prematuro. Toda vez que se concluyó que "el DSPR cometió un error en la notificación del RFP concernido, específicamente en las advertencias a las partes adversamente afectadas para presentar un recurso administrativo y/o judicial".[7]

Así las cosas, el 11 de febrero de 2025, el **DS** promulgó una nueva *Award Notification Eligibility and Enrollment System Takeover 2024-PRMP-MES-EE-004* en la cual nuevamente se le adjudicó la *buena pro* a **D2SOL** por recomendación del Comité Evaluador.[8] En lo pertinente, la notificación del aviso de adjudicación expresó:

"According to 3 L.P.R.A. § 9655, the party adversely affected by a partial or final resolution or order may, within twenty (20) days from the date of filing in the records of the notification of the resolution or order, file a **motion for reconsideration** of the resolution or order. The agency must consider it within fifteen (15) days of the filing of said motion. If it rejects it outright or does not act within fifteen (15) days, the term to request judicial review will begin to count again from the date of notification of said denial or from the expiration of those fifteen (15) days, as the case may be. If a determination is made in its consideration, the term to request judicial review will begin to count from the date on which a copy of the notification of the agency's resolution definitively resolving the motion for reconsideration is filed in the records. Such resolution must be issued and filed in the records within ninety (90) days following the filing of the motion for reconsideration. If the agency grants the motion for reconsideration but fails to take any action in relation to the motion within ninety (90) days of its filing, it will lose jurisdiction over it and the term to request judicial review will begin to count from the expiration of said ninety (90) day term unless the agency, for just cause and within said ninety (90) days, extends the term to resolve for a period that will not exceed thirty (30) additional days.
[...]
According to 3 L.P.R.A. § 9672, a party adversely affected by an agency's final order or resolution and who has exhausted all remedies provided by the agency or the appropriate appellate administrative body, may file a request for **judicial review** with the Court of Appeals within thirty (30) days. This period begins for either the date the notification of the agency's final order or resolution is filed in the records or the applicable date provided under 3 L.P.R.A. §9655, when the time limit for requesting judicial review has been interrupted by the timely filing of a motion for reconsideration. [énfasis nuestro].

---

[7] Véase, *Sentencia* determinada el 31 de enero de 2025 en el caso **KLRA202400705**, págs. 13-14.

[8] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 768- 781.

En desacuerdo, el 12 de febrero de 2025, **REDMANE** remitió un comunicado al Secretario del Departamento de Salud, la Directora Ejecutiva Interina del Programa de Medicaid de Puerto Rico y al Coordinador de Licitaciones del Programa Medicaid en el cual apuntaló que la notificación sobre la adjudicación era defectuosa al no incluir las cualificaciones mínimas evaluadas en las solicitudes de propuestas ni los criterios de evaluación mandatorios.[9]

Más tarde, el 21 de febrero de 2025, **REDMANE** presentó una *Solicitud de Reconsideración de Adjudicación de Propuesta (RFP)* ante el **DS**.[10] A su vez, el 26 de febrero de 2025, **D2SOL** presentó una *Moción de Desestimación de D2Sol, Inc.*[11]

Tras considerar las petitorias de ambas partes, la División de Vistas Administrativas profirió una *Orden* a los efectos de concederle un término al **DS** para presentar su posición con relación a los escritos presentados por **REDMANE** y **TRILLIAN**; así como la súplica de desestimación de **D2SOL**.[12] En cumplimiento, el 17 de marzo de 2025, el **DS** presentó *Contestación a Solicitud de Información Relacionada con el RFP Núm. 2024-PRMP-MES-EE-004*. Arguyó que las propuestas pudieran contener secretos comerciales y estrategias competitivas; por lo que, se ofreció una versión redactada conforme la normativa vigente sobre contratación pública.[13]

Inconforme con la respuesta del **DS**, el 21 de febrero de 2025, **REDMANE** compareció ante la JUNTA REVISORA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES (JUNTA REVISORA DE ASG), reiterando su posición en relación con la notificación defectuosa de la adjudicación del

---

[9] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 1050- 1057.

[10] *Íd.*, pág. 1072- 1143. **TRILLIAN** también presentó una *Solicitud de Reconsideración de Adjudicación de Propuesta (RFP) Número 2024-PRMP-MES-EE-004*. Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 1153- 1177.

[11] *Íd.*, págs. 1144- 1150.

[12] *Íd.*, pág. 1200.

[13] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, pág. 1207- 1208.

*RFP*.[14] Por su parte, el 27 de febrero de 2025, el **DS** presentó una *Moción de Desestimación*.[15]

Ante la desidia de la Junta Revisora de ASG, el 3 de abril de 2025, **RedMane** recurrió ante este foro intermedio revisor mediante *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato* señalando el(los) siguiente(s) error(es):

> Erró el Programa de Medicaid del Departamento de Salud al emitir una notificación defectuosa y en violación al debido proceso de ley de los licitadores toda vez indicó que el proceso de reconsideración y revisión judicial se haría conforme la Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme de Gobierno de Puerto Rico, Ley Núm. 38- 2017, según enmendada; no obstante, los procesos de revisión para procesos de licitación pública de servicios se rigen por la Sección 3.19 de dicha ley.

> Erró el Programa de Medicaid del Departamento de Salud al adjudicar la buena pro de la 2024-PMP-MES-EE-004 a D2Sol, Inc. aun cuando fue un proponente no responsable y no responsivo, errores insubsanables.

> Erró el Programa de Medicaid del Departamento de Salud al adjudicar la buena pro de la 2024-PMP-MES-EE-004 a D2Sol, Inc. y el Comité Evaluador en su análisis de criterios, propuestas y del expediente, de forma ilegal, irrazonable, arbitraria, caprichosa, constitutiva de un craso abuso de discreción.

> Erró el Programa de Medicaid del Departamento de Salud en adjudicar la buena pro de la 2024-PMP-MES-EE-004 a D2Sol, Inc. a pesar de la ilegalidad de algunos elementos del RFP, de las políticas y procedimientos y del proceso.

> Erró el Programa de Medicaid del Departamento de Salud al negar acceso a todos los documentos de adjudicación a los proponentes una vez adjudicada la propuesta.

El 7 de abril de 2025, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de treinta (30) días a **DS, D2Sol, Inc. y Otros** para presentar sus respectivos alegatos en oposición. Poco después, el 25 de abril de 2025, **RedMane** presentó *Moción Informando Presentación de Apelación ante el Tribunal Supremo y de Paralización de los Procedimientos al Amparo de la Regla 52.3 de Procedimiento Civil de Puerto Rico* en la cual reveló

---

[14] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, págs. 1209- 1267.
[15] *Íd.*, págs. 1268- 1276.

haber interpuesto recurso ante el Tribunal Supremo referente al caso **KLRA202400705.**

El 6 de mayo de 2025, **TRILLIAN** presentó su *Réplica a Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*. Del mismo modo, el 8 de mayo de 2025, **D2SOL** presentó un *Alegato de D2Sol, Inc. en Oposición a Recurso de Revisión Judicial de Determinación Administrativa*. Por su parte, el **DS** presentó un *Escrito en Cumplimiento de Orden* en la cual suplicó la desestimación del recurso a los fines de que la agencia continúe con los procedimientos para re-notificar dicho aviso por haber dispuesto que el término de revisión judicial es de treinta (30) y no veinte (20) días calendarios.

El 21 de mayo de 2025, proferimos una *Resolución* declarando no ha lugar la solicitud de paralización presentada por **REDMANE**, y le otorgamos un plazo perentorio de cinco (5) días para exponer su posición sobre el petitorio de desestimación del recurso. En observancia, el 29 de mayo de 2025, **REDMANE** presentó su *Alegato Estableciendo Posición*.

Posteriormente, el 13 de junio de 2025, **REDMANE** presentó *Moción Eliminatoria y en Réplica al Alegato de D2Sol Bajo la Regla 63 (b)*. El 16 de junio de 2025, **REDMANE** presentó *Urgente Moción Informativa sobre Nueva Opinión del Tribunal Supremo de Puerto Rico*. El 18 de junio de 2025, **D2SOL** presentó *Oposición a "Moción Eliminatoria y en Réplica al Alegato de D2Sol Bajo la Regla 63(b)"*.

Unos días más tarde, el 1 de julio de 2025, **REDMANE** presentó una *Moción en Auxilio de Jurisdicción y Solicitud de Paralización de Procedimientos* implorando la paralización inmediata de cualquier actuación administrativa del **DS** o de la JUNTA REVISORA DE ASG, así como la suspensión de cualquier intento de formalizar o ejecutar contrato alguno hasta tanto advenga final y firme los procedimientos judiciales pendientes. El 11 de julio de 2025, pronunciamos *Resolución* en la cual le concedimos a **DS, D2SOL,**

INC. Y OTROS un plazo perentorio, hasta el 15 de julio de 2025, para exponer su posición concerniente al auxilio de jurisdicción.

Conforme lo anterior, el 14 de julio de 2025, TRILLIAN presentó *Moción en Cumplimiento de Orden*. El 15 de julio de 2025, D2SOL presentó una *Moción en Cumplimiento con Orden y Oposición a Cuarta Moción en Auxilio de Jurisdicción*. A su vez, el DS presentó su *Oposición a [Solicitud] en Auxilio de Jurisdicción y Solicitud de Paralización de Procedimientos*. En respuesta, el 16 de julio de 2025, REDMANE presentó *Réplica a Mociones Mostrando Causa en Auxilio de Jurisdicción y Solicitando Paralización de los Procedimientos*. Así pues, el 18 de julio de 2025, enunciamos *Resolución* declarando ha lugar la solicitud de auxilio de jurisdicción y ordenando la paralización de los procedimientos.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

- A - *Revisión Administrativa*

La Ley Núm. 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[16] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[17]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[18] El criterio rector al momento de pasar juicio sobre una decisión de un

---

[16] 3 LPRA secs. 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[17] 3 LPRA sec. 9671.
[18] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004); véase J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones Situm, 2017, págs. 304–306.

foro administrativo es la *razonabilidad* de la actuación de la agencia.[19] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[20]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[21] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria—sobre las que los tribunales son especialistas—y cuestiones propias de la discreción o pericia administrativa.[22] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[23]

Ahora bien, tal norma no es absoluta. Nuestro más Alto Foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[24] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.[25]

---

[19] *Fonte Elizondo v. F & R Const.*, 196 DPR 353 (2016); *Otero v. Toyota*, 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.

[20] *Pérez López v. Depto. Corrección*, 208 DPR 656, 660 (2022).

[21] *Transporte Sonnell, LLC v. Junta de Subastas*, 2024 TSPR 82; *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).

[22] *OCS v. Point Guard Ins*., 205 DPR 1005, 1028 (2020).

[23] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).

[24] *Torres Rivera v. Policía de PR*, *supra*, pág. 628.

[25] *Íd.*

Primordialmente, el alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a comprobar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[26]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[27] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[28] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[29] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que el discernimiento de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[30] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[31] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[32]

---

[26] 3 LPRA sec. 9675; *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022).
[27] *Acosta Cardona, Ex parte*, 201 DPR 26, 36 (2018).
[28] *Otero v. Toyota, supra*, pág. 728.
[29] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[30] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[31] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[32] *Íd.*

Por otro lado, las conclusiones de derecho de la agencia son revisables en *todos* sus aspectos, sin sujeción a norma o criterio alguno.[33] Nuestro Máximo Foro ha expresado que "los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias".[34] Es decir, no existe deferencia en la interpretación de derecho realizada por una agencia administrativa, debido a que esto es una función consustancial de los tribunales de justicia.[35]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[36] A *contrario sensu*, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[37] Del mismo modo, el Prof. Echevarría Vargas ha apuntalado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[38]

### - B – *Subastas y Request for Proposal*

La subasta formal y el *requerimiento de propuestas* (*Request for Proposal- RFP*) son los dos (2) vehículos procesales ordinariamente utilizados por el Gobierno, así como los municipios, para la adquisición de bienes y servicios.[39] Su objetivo principal es brindarle protección al erario mediante el acceso a la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible.[40]

---

[33] 3 LPRA sec. 9675.
[34] *Vázquez v. Consejo Titulares*, 2025 TSPR 56, pág. 28.
[35] *Íd.*, pág. 32.
[36] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[37] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009).
[38] J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ediciones Situm, 2023, pág. 340.
[39] *Transporte Sonnell, LLC v. Junta de Subastas*, 2024 TSPR 82; 214 DPR ___; *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019) (sentencia).
[40] *Super Asphalt v. AFI y otro*, 206 DPR 803, 821 (2021).

El *requerimiento de propuestas* se distingue por ser un procedimiento más flexible e informal para la adquisición de bienes y servicios por el Gobierno.[41] A diferencia de la subasta, este mecanismo permite que, durante la evaluación de las propuestas, el Estado pueda entablar negociaciones con los licitadores. De forma que le confiere a estos la oportunidad de revisar y modificar sus ofertas antes de la adjudicación de la buena pro.[42] Este procedimiento se utiliza cuando se interesa obtener bienes o servicios especializados que involucran asuntos altamente técnicos y complejos, o cuando existen pocos competidores cualificados.[43] El *requerimiento de propuestas* debe incluir aquellos requisitos y factores que se utilizarán para la adjudicación del contrato; el valor o peso que se asigne a éstos; y las fechas en que se recibirán y evaluarán las propuestas y se adjudicará la buena pro.[44] Un *RFP* no está exento de revisión judicial.[45] Mediante la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), *supra*, la legislatura delegó a cada agencia gubernamental la facultad de aprobar su propio reglamento para establecer el procedimiento y las guías a seguir en estos procesos.[46] Es preciso señalar que, el derecho a cuestionar una adjudicación de una subasta o *RFP*, mediante el proceso de revisión judicial, forma parte del debido proceso de ley.[47] De manera que, en aras de ejercer tal derecho, resulta indispensable que las notificaciones que se emitan durante estos procesos se realicen correctamente a todas las partes.[48]

### - C - *Notificaciones*

El Art. 4.002 de la Ley Núm. 201-2003, según enmendada, conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico* implanta la competencia del Tribunal de Apelaciones, disponiendo que podrá conocer

---

[41] *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 996 (2009).
[42] *Íd.*, pág. 997.
[43] *St. James Sec. v. AEE*, 213 DPR 366 (2023).
[44] *R & B Power v. E.L.A.*, 170 DPR 606, 622 (2007).
[45] *Municipio de Aguada v. W. Construction, LLC y otro, supra.*
[46] *Íd.*; *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 533 (2019).
[47] *St. James Sec. v. AEE, supra.*
[48] *Íd.*

de los siguientes asuntos: (a) recursos de *apelación* de toda sentencia final dictada por el Tribunal de Primera Instancia; (b) recursos de *certiorari* expedido a su discreción de cualquier resolución u orden dictada por el Tribunal de Primera Instancia; (c) recursos de *revisión judicial* de las decisiones finales de los organismos y agencias administrativas; (d) recursos de *mandamus y habeas corpus;* y (e) cualquier otro asunto determinado por ley especial.[49]

Ante ello, son los tribunales quienes tienen la obligación de asegurar que las entidades públicas cumplan con las disposiciones normativas aplicables, los reglamentos y procedimientos adoptados para regir la celebración de subastas para la adquisición de bienes y servicios del sector privado. Del mismo modo deben afianzar que en estos procesos se trate de forma justa e igualitaria a todos los licitadores al momento de recibir y evaluar sus propuestas, así como de adjudicar la subasta.[50]

Nuestro más Alto Curia ha reconocido que el derecho a cuestionar una adjudicación o decisión final, mediante el mecanismo de *revisión judicial*, es parte del debido proceso de ley.[51] Por esto, resulta indispensable que se notifique adecuadamente a todas las partes cobijadas por ese derecho.[52] Si no se cumpliera con estas garantías mínimas, el derecho a revisar la disposición de la Junta de Subastas sería ineficaz debido a que el propósito de la notificación es que los licitadores perdidosos tengan la oportunidad de interpelar revisión judicial dentro del término jurisdiccional aplicable.[53]

Asimismo, nuestro Tribunal de Última Instancia ha dilucidado que la exigencia de fundamentar la adjudicación de una subasta permite al tribunal cumplir con su obligación constitucional de asegurar que el derecho a obtener la *revisión judicial* de una decisión sea efectivo.[54] Detalla, además,

---

[49] Art. 4.002 de la Ley Núm. 201-2003, 4 LPRA § 24 (y).
[50] *RBR Const., S.E. v. A.C.*, 149 DPR 836, 856 (1999).
[51] *Puerto Rico Asphalt v. Junta, supra*; *PR Eco Park et al. v. Mun. de Yauco, supra*.
[52] *Íd.*
[53] *Íd.*
[54] *Íd.*, haciendo referencia a *L.P.C. & D, Inc. v. A.C.*, 149 DPR 869, 877- 888 (1999).

que una notificación fundada permite que los tribunales puedan revisar efectivamente los fundamentos para concluir si la adjudicación realizada por la Junta de Subastas ha sido arbitraria, caprichosa o irrazonable, más aún en el caso de subastas públicas, en virtud de las cuales se desembolsan fondos públicos.[55] Si la parte adversamente afectada desconoce los fundamentos que propiciaron la decisión, *el trámite de la revisión judicial de la determinación administrativa se convertiría en un ejercicio fútil.*[56] En este sentido, *no basta con informar la disponibilidad y el plazo para solicitar la reconsideración y la revisión.*[57]

Atinente al contenido de la notificación de la adjudicación de la subasta, tanto la normativa aplicable como las opiniones pronunciadas por nuestro Tribunal Supremo han sido enfáticas y claras en lo que debe incluir para que satisfaga las exigencias mínimas del debido proceso de ley y facilite la revisión judicial. En el caso *L.P.C.& D., Inc. v. A.C.*, *supra*, ante una notificación de una adjudicación de subasta de una agencia administrativa en la cual se advirtió de la disponibilidad y el término para solicitar reconsideración, *pero no se fundamentó la determinación*, por primera vez se implantó que una decisión administrativa tenía que estar fundamentada, pues una parte necesita conocer los motivos de la agencia para poder ejercer su derecho a la revisión judicial.[58] Así, prescribió que una notificación sobre adjudicación de subasta, aunque sea de forma sumaria y sucinta, debía incluir: (1) los nombres de los licitadores en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se consideraron para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos, y; (4) la disponibilidad y el plazo para solicitar la reconsideración y la *revisión judicial.*[59] Posteriormente, en *Pta. Arenas*

---

[55] *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 DPR 733, 742 (2001).
[56] *Puerto Rico Asphalt v. Junta, supra*; *L.P.C.& D., Inc. v. A.C., supra*, pág. 878.
[57] *Íd.*
[58] *L.P.C.& D., Inc. v. A.C., supra*, págs. 878- 879.
[59] *L.P.C.& D., Inc. v. A.C., supra*, págs. 879.

*Concrete, Inc. v. J. Subastas, supra*, se hizo extensiva dicha norma a las subastas celebradas por los municipios.[60]

A raíz de esto, se ha precisado que "*una notificación defectuosa puede tener el efecto irremediable de afectar el derecho de una parte a cuestionar la adjudicación de subasta; también el de privar de jurisdicción al foro revisor para entender el asunto impugnado*".[61] Si la notificación en cuestión adolece de los requisitos instituidos por la legislación y reglamentación, procede devolver el asunto para que formule una notificación que cumpla con ello.[62] Por ende, *"[s]ólo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial"*.[63]

Esta exigencia hace efectivo el ejercicio del derecho a solicitar *revisión judicial* de las adjudicaciones de subasta, toda vez que —al conocer el perjudicado las razones que tuvo el ente administrativo o municipal para su determinación— este contará con los fundamentos necesarios para cuestionarla, y los tribunales estaremos aptos para ejercer nuestra función revisora.[64]

Al ejercer la función revisora en casos de subastas o *request for proposal*, los tribunales apelativos mostrarán gran consideración y deferencia a la adjudicación administrativa por razón de su experiencia y conocimiento especializado. Empero, tales determinaciones no gozan de deferencia cuando no son razonables, hay ausencia de prueba adecuada para sostenerla, se cometió un error manifiesto en su apreciación o tiene visos de arbitrariedad.[65] Es decir, tanto las adjudicaciones de subastas como las decisiones administrativas tienen a su favor una presunción de legalidad y corrección que debe ser respetada mientras la parte que las impugne no

---

[60] *Pta. Arenas Concrete, Inc. v. J. Subastas, supra*, págs. 743-744.

[61] *Puerto Rico Asphalt v. Junta, supra; PR Eco Park et al. v. Mun. de Yauco, supra; IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 38 (2000).

[62] *Puerto Rico Asphalt v. Junta, supra*; *Pta. Arenas Concrete, Inc. v. J. Subastas, supra,* pág. 744; *L.P.C.& D., Inc. v. A.C., supra,* pág. 880.

[63] *IM Winner, Inc. v. Mun. de Guayanilla, supra,* pág. 738.

[64] *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886 (2007); *L.P.C. & D., Inc. v. A.C., supra*, pág. 879.

[65] *Torres Prods. v. Junta Mun. Aguadilla, supra; RBR Const. SE v. AC, supra*, págs. 856-857.

produzca suficiente evidencia para derrotarla.[66] La cuestión debe decidirse a la luz del interés público y la determinación debe ser sostenida si cumple con el criterio de razonabilidad.[67]

## - III –

En su primer señalamiento de error, REDMANE argumenta que incidió el **DS** al dictaminar la notificación defectuosa de la adjudicación del *RFP* Núm. 2024-PMP-MES-EE-004, fechada el 11 de febrero de 2025, en violación al debido proceso de ley de los licitadores participantes, toda vez que los términos advertidos para la reconsideración y *revisión judicial* son erróneos. Concretamente, sostiene que la Sección 3.19 de la LPAU instaura los procesos de *revisión administrativa* para una parte adversamente afectada por una determinación en casi todos los procesos de licitación pública, y tal disposición es aplicable al *RFP* aquí impugnado. Además, destaca que de la notificación de la adjudicación **no** surge: (1) si las propuestas consideradas fueron oportunamente recibidas; (2) el análisis del cumplimiento de los requisitos por los proponentes; (3) el cernimiento del cumplimiento con las cualificaciones mandatorias; y (4) la justificación de la notificación de la adjudicación.

Por su parte, el **DS** asegura que la Ley Núm. 73- 2019 dispone claramente que dicho estatuto regirá los procedimientos de compras y subastas de bienes, obras y servicios **no** profesionales en todas las Entidades Gubernamentales y las Entidades Exentas; por lo que, no debe aplicarse a la controversia ante nuestra consideración. Además, manifestó que el término de *revisión judicial* uniforme para todos los procesos de licitación pública – sean o no de servicios profesionales – es de veinte (20) días calendario desde la determinación final de la agencia. Ello, pues parecería inapropiado aplicar a un proceso informal – como lo es un *RFP* o una subasta – un término tan largo de treinta (30) días.

---

[66] *Caribbean Communication v. Pol. de P.R., supra,* pág. 1006.
[67] *Íd.*; *A.E.E. v. Maxon*, 163 DPR 434 (2004); *RBR Const. SE v. AC, supra*, págs. 856- 857.

Conforme la normativa antes expuesta, este Tribunal reconoce el interés apremiante gubernamental de proteger los fondos públicos, fomentando la libre y diáfana competencia, entre el mayor número de licitadores posibles. Lo antes, garantizando un debido proceso de ley a todos los participantes con transparencia, eficiencia, sensibilidad y responsabilidad fiscal.[68]

En vista de lo anterior, tras una evaluación minuciosa de la adjudicación del *RFP* Núm. 2024-PMP-MES-EE-004 que el **DS** divulgó el 11 de febrero de 2025, constatamos que, cónsono con los estatutos vigentes al momento de dicha adjudicación, la misma **no** constituye una notificación adecuada en conformidad con la normativa aplicable. Veamos.

Es de notar que, el requerimiento de propuestas objeto del presente recurso versa sobre un **servicio profesional** y a esos efectos el *RFP* fue adjudicado por la propia agencia recurrida. Así lo reconoció el **DS** en su notificación de adjudicación.[69] Con respecto a ello, la Ley Núm. 73 de 19 de junio de 2019, conocida como la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019* (Ley de la ASG) en su Artículo 3 expresa:

> "[l]as disposiciones de esta Ley regirán los procesos de compras y subastas de bienes, obras y **servicios no profesionales** en todas las Entidades Gubernamentales y las Entidades Exentas."[70]

A su vez, el Alto Foro resolvió que las contrataciones de **servicios profesionales no** están sujetas a revisión ante la JUNTA REVISORA DE SUBASTAS DE LA ASG.[71]

De un análisis de las leyes correspondientes y alegadas por las partes, no identificamos que el legislador haya concretado de forma indiscutible que se elimina el derecho de los licitadores no agraciados de un *RFP*, a cuestionar

---

[68] Véase *Exposición de Motivos* de la Ley Núm. 48 de 19 de febrero de 2024 y la Ley Núm. 153 de 12 de agosto de 2024.

[69] Apéndice de la *Solicitud de Revisión Judicial sobre Adjudicación de Propuesta (RFP) y Alegato*, pág. 774.

[70] (Énfasis suplido.) 3 LPRA § 9831b.

[71] *St. James Sec. v. AEE, supra.*

una adjudicación por servicios profesionales ante la agencia que lo adjudica, antes de recurrir ante este foro apelativo en revisión judicial. Empero, sí se ha dispuesto que las agencias **exentas** de la Ley de la ASG o, en su defecto, a las exentas por tratarse de servicios profesionales – como lo es el **DS** – **deben adoptar medidas o reglamentos a estos fines y que resulten en armonía con los propósitos fijados en nuestro ordenamiento jurídico sobre las licitaciones públicas**.[72] Sobre lo antes, nuestro Tribunal Supremo ha puntualizado que "[l]as agencias tienen el deber de especificar, mediante reglamentación, los criterios esbozados de forma muy general en la legislación[,] para evitar una aplicación arbitraria e injusta y proveer guías adecuadas para que las partes afectadas por las acciones de la agencia administrativa estén debidamente informadas del estado de derecho vigente.[73]

En el caso atinente, colegimos que el **DS no** ha tenido ni tiene un reglamento vigente para licitaciones de servicios profesionales. Por tanto, nuestra determinación se limita a identificar el error, si alguno, sin prejuzgar los méritos del asunto presentado ante este Tribunal. Es menester destacar que no nos convence la postura del **DS** que promueve que adoptemos los términos y procesos atingentes a la solicitud de reconsideración dispuestos en la Sección 3.15 de la LPAU, *supra*. Ello, toda vez que dicha sección versa sobre los procesos ordinarios de reconsideraciones de las determinaciones administrativas con términos que no corresponden a subastas y/o a *RFP* de servicios profesionales. Sería extender, sin más, el procedimiento de revisión

---

[72] Véase, el Boletín Administrativo Núm. OE-2021-029, intitulado *Orden Ejecutiva del Gobernador de Puerto Rico, Hon. Pedro R. Pierluisi,* y la Carta Circular Núm. 013-2021 de la Oficina de Gerencia y Presupuesto (OGPe), la cual requiere que las entidades que componen el Poder Ejecutivo del Gobierno de Puerto Rico, que interesen otorgar *contratos de servicios profesionales* por la cantidad de doscientos cincuenta mil dólares ($250,000.00) o más, durante un año fiscal, están obligadas **a establecer unas guías uniformes regulando el proceso para evaluar y autorizar solicitudes, a modo de asegurar la transparencia, eficiencia, sensibilidad y responsabilidad fiscal en la contratación gubernamental de servicios profesionales**.

[73] *Báez Díaz v. E.L.A.*, 179 DPR 605, 619 (2010).

de una adjudicación de una subasta o un *RFP* por servicios profesionales, cuando dichos procesos deben llevarse a cabo con premura.

En estas circunstancias, debemos determinar si la notificación que hoy revisamos cumple con lo requerido para una *revisión judicial* ante el Tribunal de Apelaciones. La notificación pronunciada el 11 de febrero de 2025, por el **DS**, cita la Sección 4.2 de la LPAU y dispone que, el licitador perdidoso o afectado por la determinación final de una agencia puede recurrir ante el foro apelativo ("Court of Appeals") en un plazo de treinta (30) días. El **DS** reconoce que los términos expuestos en la Sección 3.19 corresponden a procesos ante la ASG por servicios no profesionales, por lo que no rigen en el proceso de revisión judicial del *RFP* impugnado. Como resultado, razonó que procede aplicar a este caso el término de veinte (20) días calendario para la revisión judicial que establece la Sección 4.2 de la LPAU, *supra*.

En vista de que el *RFP* que nos ocupa es sobre un **servicio profesional**, y la Ley de la ASG **no** contempla la *revisión judicial* de licitaciones públicas de servicios profesionales, deducimos que ofrecer y permitir una solicitud de revisión administrativa ante la JUNTA REVISORA DE LA ASG **no** es un remedio viable para los licitadores perdidosos en la presente causa. Ante el hecho de que es una licitación de un servicio profesional, cuya adjudicación fue notificada por el **DS**, inferimos que, el término aplicable para presentar una *revisión judicial* ante este foro revisor, sobre el *RFP* objeto de este recurso es el de treinta (30) días contemplado por la Sección 4.2 de la LPAU, *supra,* el cual no ha comenzado a transcurrir ante los defectos en la notificación.

Aun cuando el término incluido sobre *revisión judicial* contenido en la notificación es correcto, la deficiencia de inducir a error mediante la aplicación de la Sección 3.15 de la LPAU invalida los efectos de la presente notificación de adjudicación del *RFP* por el **DS**. Así como, **no** incluir las

fechas en que fueron sometidas las propuestas de las distintas entidades; y el cernimiento del cumplimiento con las cualificaciones mandatorias.

En estas condiciones, cónsono con el derecho antes expuesto, ante la ausencia de una notificación adecuada que cumpla con los requerimientos necesarios, la adjudicación efectuada el 11 de febrero de 2025 por el **DS** carece de eficacia. Por ende, la adjudicación objeto de este recurso **no** surte efecto jurídico alguno y el término para acudir en *revisión judicial* ante este foro revisor no ha comenzado a transcurrir.

- **IV** -

Por los fundamentos antes expuestos, declaramos **inoficiosa** la *Award Notification Eligibility and Enrollment System Takeover 2024-PRMP-MES-EE-004* notificada el 11 de febrero de 2025 por el **DS**; y, por tanto, *revocamos* dicha adjudicación. Se devuelve el asunto ante el PROGRAMA DE MEDICAID DEL DEPARTAMENTO DE SALUD (**DS**) y nos abstenemos de revisar cualquier asunto concerniente a los méritos de la determinación de la agencia recurrida sobre el *RFP* impugnado. Además, *dejamos* sin efecto la paralización de los procedimientos dispuesta mediante la *Resolución* formulada el pasado 18 de julio.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Las Juezas Cintrón Cintrón y Rivera Marchand concurren sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones